```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

-----------------------------------x
PIERRE ARMAND,                     :
                                   :
               Petitioner,         :  CIVIL NO. 3:12CV769 (AWT)
                                   :
v.                                 :
                                   :
UNITED STATES OF AMERICA,          :
                                   :
               Respondent.         :
-----------------------------------x
```

### RULING ON MOTION PURSUANT TO 28 U.S.C. § 2255

Petitioner Pierre Armand, proceeding pro se, has filed a motion pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct his sentence. For the reasons set forth below, the petitioner's contentions are without merit, and the motion is being denied without a hearing.

### I.   Factual and Procedural Background

On December 20, 2010, the petitioner waived his right to indictment and pleaded guilty to a one-count information, which charged him with wire fraud in violation of 18 U.S.C. § 1343. The parties entered into a written plea agreement. Among other things, the written plea agreement provided that the government agreed to recommend a three-level reduction under the Sentencing Guidelines for acceptance of responsibility, resulting in a total offense level of 16. The parties also agreed that the petitioner was in Criminal History Category I, that the

1

applicable sentencing range under the Sentencing Guidelines was 21 to 27 months of imprisonment, and that the petitioner was also subject to a supervised release term of three to five years. The plea agreement took note of the court's right to impose a sentence independent of the determination by the parties of the applicable Sentencing Guidelines range. The petitioner waived his rights to appeal and collaterally attack his conviction and sentence if the sentence of imprisonment did not exceed 27 months. In addition, the petitioner waived his rights to appeal and collaterally attack his guilty plea, conviction, or sentence based on any consequences relating to the petitioner's immigration status.

At the December 20, 2010 guilty plea hearing, the petitioner submitted a written petition in his own handwriting, which included the following admissions:

> I had to sign notes [to the investors] misrepresenting that funds obtained from these investors would be used solely for the constructing of the projects or to purchase building portfolios when large amounts of such funds were used to cover my personal costs and the office costs of operations or to reimburse previous lenders. I then made false statements defrauding people to provide money to me to keep the business going. In the process I want to confirm that I am guilty as charged.

A-74-75 (Ex. to Gov't's Response).

The petitioner later explained his conduct when trying to get funding for certain projects in his own words:

> In the process, I made some misrepresentations and in the process I had to convince people so that they could bring their money . . . . And that's how at least these decisions were made, and that's how at least I felt that I'm so sorry, at least, that I had to lie to people to get them to contribute funds that I thought would be used just to construct this project that I wanted to do.

A-59. The government then summarized the evidence it would present if the case proceeded to trial. In particular, the government noted:

> [T]he evidence would establish beyond a reasonable doubt that a material portion of those funds [monies from investors] did not go as specifically had been represented – did not go to the places that had been specifically represented to the investors that they would be used for. In fact . . . certain of those monies were used to pay for the defendant's personal expenses and other items.

A-61. The petitioner agreed with the government's summary and did not take issue with any aspect of the summary when questioned by the court. See A-62.

**II. Legal Standard**

A "collateral attack on a final judgment in a criminal case is generally available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in complete miscarriage of justice." Graziano v. United States, 83 F.3d 587, 590 (2d Cir. 1996) (internal citation and quotation marks omitted). Section 2255 provides that a district court should grant a hearing "[u]nless the

3

motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). However, "[t]he language of the statute does not strip the district courts of all discretion to exercise their common sense." Machibroda v. United States, 368 U.S. 487, 495 (1962). In making its determination regarding the necessity of a hearing, a district court may draw upon its personal knowledge and recollection of the case. See Blackledge v. Allison, 431 U.S. 63, 74 n.4 (1997); United States v. Aiello, 900 F.2d 528, 534 (2d Cir. 1990). A § 2255 petition, or any part of it, then, may be dismissed without a hearing if, after a review of the record, the court determines that the motion is without merit because the allegations are insufficient as a matter of law.

**III. Discussion**

The petitioner states three grounds for his § 2255 petition: ineffective assistance of counsel, governmental misconduct, and his sentence was imposed in violation of the Constitution.

**A.   Ineffective Assistance of Counsel**

To prevail on an ineffective assistance of counsel claim, the petitioner must show that his "counsel's representation fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 687–88,

4

694 (1984). "The court 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' bearing in mind that '[t]here are countless ways to provide effective assistance in any given case' and that '[e]ven the best criminal defense attorneys would not defend a particular client in the same way.'" United States v. Aguirre, 912 F.2d 555, 560 (2d Cir. 1990) (quoting Strickland, 466 U.S. at 689). "The court's central concern is not with 'grad[ing] counsel's performance,' but with discerning 'whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results.'" Id. at 560 (quoting Strickland, 466 U.S. at 696-97) (internal citations omitted)).

The petitioner claims that his trial counsel gave him ineffective assistance: (1) by advising him to waive his right to indictment; (2) by misleading the petitioner into believing that he would receive a non-prison sentence because his counsel formerly worked for the judge; (3) by promising to negotiate with the prosecutor not to mention specific loss figures during the sentencing so the petitioner would not face deportation by the immigration authorities; (4) by threatening the defendant to get him to plead guilty; and (5) by drafting an admission-of-

5

guilt letter to the court, which the petitioner then copied in his own handwriting.

The court finds the petitioner's contentions concerning ineffective assistance of counsel unpersuasive in light of the record here. First, the transcript of the December 20, 2010 plea hearing reflects that the petitioner waived his right to an indictment voluntarily and knowingly after being canvassed by the court, including being given an opportunity to ask any questions he might have relating to the waiver.

> THE COURT: Mr. Armand, have you discussed with your attorney the matter of waiving your right to indictment by the grand jury?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: And sir, do you understand your right to indictment by a grand jury?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: And sir, have any threats or promises been made to induce you to waive indictment?
>
> THE DEFENDANT: To induce me?
>
> THE COURT: Yes.
>
> THE DEFENDANT: No, Your Honor.
>
> THE COURT: Do you have any questions about that?
>
> THE DEFENDANT: No, Your Honor.
>
> THE COURT: So is it correct that no threats or promises have been made to induce you to waive indictment?
>
> THE DEFENDANT: No, Your Honor.

> THE COURT: Let me restate that. Have any threats or promises been made to induce you to waive indictment?
>
> THE DEFENDANT: Inducing me to waive indictment? No, Your Honor.
>
> THE COURT: Okay . . . . Mr. Armand, do you wish to waive your right to indictment by a grand jury?
>
> THE DEFENDANT: Yes, Your Honor.

A-35-36. Also, there is nothing out of the ordinary about counsel advising a client to waive indictment, and the petitioner points to no reason why his counsel's advice to him that he should waive indictment was unreasonable.

Second, the petitioner's claim that he was misled by his counsel into believing that he would receive a non-prison sentence is contradicted by the petitioner's responses to the court's questions during the plea hearing.

> THE COURT: And has your attorney explained to you how your sentence may be determined?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: And do you understand that I am not bound by any explanation or recommendation made by your attorney or by the government?
>
> THE DEFENDANT: Yes, Your Honor.

A-54-55. The court then confirmed with defense counsel, in the presence of the petitioner, that she had discussed how the Sentencing Guidelines related to the petitioner's case and confirmed that she had informed the petitioner that the court

7

"was not bound by [her] estimate or explanation or the terms of the plea agreement, or any recommendation from the government." A-55.

Third, the petitioner's claim that specific loss figures would not be mentioned during the sentencing is contradicted by the plea agreement and the representations made during the plea hearing. The plea agreement provides that "[t]he defendant agrees to a restitution order in favor of victims identified at sentencing in the amounts determined by the [c]ourt at sentencing to be the relevant Guidelines loss," Plea Agreement at 2, and further provides that "[t]he parties agree that the base offense level is increased by 12 levels under 2B1.1(b)(1)(G)," which is the Guidelines reference to a loss range. Id. at 3. In addition, the government stated at the plea hearing:

> MR. SCHMEISSER: Your Honor, I think that the present state of the record is that the government plans to present a loss amount to the Probation Office that it's currently finalizing. The parties, I think, are in agreement that under the Guideline stipulation as to where that loss would fall. I believe the defense has reserved the right to contest the loss once the government finalizes it, but it would fall within the range that is reflected.

A-44.

Fourth, nothing in the record, which includes numerous statements by the petitioner during the plea hearing, gives any suggestion that he was threatened or that the plea was not made

8

voluntarily and knowingly. During the plea colloquy, the court determined that the petitioner was of sound mind, see A-31-33, 64, and that there was a factual basis for the plea. See A-20-21, 57-62, 64. The court also determined that the petitioner was not pleading guilty because of any threats or coercion or promises other than those in the plea agreement:

> THE COURT: Other than the promises contained in the written agreement, has anyone made any promises that are causing you to plead guilty or any promises that are causing you to waive your right to appeal or collaterally attack your sentence?
>
> THE DEFENDANT: No, Your Honor.
>
> THE COURT: Has anyone made any threats against you, or is anyone in any way forcing or otherwise coercing you to plead guilty or to waive your right to appeal or collaterally attack your sentence?
>
> THE DEFENDANT: No, Your Honor.

A-49.

Fifth, the substance of the petitioner's handwritten submission is corroborated by his own oral admissions at the plea hearing. See A-57 to 59. A comparison of those oral admissions to the written statement he submitted to the court as part of his guilty plea shows that he did not simply read the written statement.  See A-74 to 75.

Based on the foregoing, the court finds that there is no factual basis for the petitioner's ineffective assistance of counsel claim.

9

### B.   Governmental Misconduct

The court finds that the petitioner's claim of governmental misconduct is procedurally barred and that, in any event, there is no factual basis for the claim.

"[I]f a petitioner fails to assert a claim on direct review, he is barred from raising the claim in a subsequent § 2255 proceeding unless he can establish both cause for the procedural default and actual prejudice resulting therefrom or that he is 'actually innocent' of the crime of which he was convicted." Dejesus v. United States, 161 F.3d 99, 102 (2d Cir. 1998). Here, the petitioner did not raise any claim of governmental misconduct at his plea hearing, at his sentencing, or on direct appeal. The failure to raise this claim on direct appeal prevents the petitioner from asserting the claim for the first time in a § 2255 motion. See United States v. Rodgers, 101 F.3d 247, 252-53 (2d Cir. 1996) (rejecting defendant's collateral attack based on alleged governmental misconduct because defendant failed to raise a claim of misconduct on direct appeal). Moreover, the petitioner's counsel for his direct appeal filed an Anders brief after a careful review of the record, and the petitioner's assertion of innocence contradicts his oral admissions during the plea hearing.

10

C.  Sentence In Violation of the Constitution

The petitioner argues that the court had no jurisdiction to impose a jail sentence. The petitioner "insists that the indictment clause of the Fifth Amendment of the United States Constitution and Rule 7(a) of the Federal Rules of Criminal procedure require an indictment for any sentence more than a year." Sec. 2255 Mot. ("Doc. No. 1") at 16. However, as the court explained to the petitioner during his guilty plea hearing, unless he waived indictment he could not be charged with a felony "unless a grand jury finds by return of an indictment that there is probable cause to believe that a crime has been committed and that you committed that crime." A-34. The petitioner stated that he understood that fact and then proceeded to waive indictment. To the extent that this argument rests on the petitioner's position that his waiver of indictment was not valid because of ineffective assistance of counsel, that argument lacks merit for the reasons discussed earlier in this ruling.

**IV. Conclusion**

For the reasons set forth above, the Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255 (Doc. No. 1) is hereby DENIED. The court will not issue a certificate of appealability because the petitioner has not made a substantial

11

showing of the denial of a constitutional right. <u>See</u> 28 U.S.C. § 2253(c)(2).

    The Clerk shall close this case.

    It is so ordered.

    Signed on this 24th day of September 2015, at Hartford, Connecticut.

                                                /s/AWT_____
                                                Alvin W. Thompson
                                      United States District Judge